**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Yiwu Baimei Electronic Commerce Co., Ltd., | ) | Case: |
| a Chinese Limited Corporation | ) | |
| | ) | Judge: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The Partnerships And | ) | |
| Unincorporated Associations | ) | |
| Identified On Schedule "A" | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, Yiwu Baimei Electronic Commerce Co., Ltd., a Chinese Limited Corporation (hereinafter, "Plaintiff" or "Baimei"), hereby brings the present action against The Partnerships And Unincorporated Associations Identified on Schedule "A" attached hereto, (collectively, "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a) – (b) and 28 U.S.C. § 1331 and the Federal Copyright Act, 17 U.S.C. § 101, et seq.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Names/

1

Aliases in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants reach out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can and, on information and belief, have purchased products bearing infringing versions of Plaintiff's federally registered trademark and copyright.

3.      Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products that infringe Plaintiff's federally registered intellectual property. As a result, each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

4.      Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## INTRODUCTION

5.      This action has been filed by Plaintiff to combat online e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's trademark, which is covered by U.S. Trademark Registration No. 5,805,891 ("the Mark" hereinafter) on July 16, 2019 for use with goods in class 14, including jewelry of alloy metal. A true and correct copy of the federal trademark registration certificate for the Mark is attached hereto as Exhibit One. The Registration is valid, subsisting, and in full force and effect.

2

6.     The stylized and distinctive graphic of the Mark consistent with the depiction in the registration appears below:



*See* Exh. One.

7.     On November 14, 2022, Plaintiff registered two photographs (hereinafter referred to as "the Long Tail Cat Image") with the United States Copyright Office and received Registration No. VA 2-330-282. A true and correct copy of the federal registration record for the Long Tail Cat Image, with a relevant sample, is attached hereto as Exhibit Two. The dual designs depict a cat with an elongated tail, including the trademark design affixed to the heart center of the cat. The Registration is valid, subsisting, and in full force and effect.




*See* Exh. Two.

8.     The Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff's products, while selling inferior imitations of Plaintiff's products. These Defendant Internet Stores often include in their offers for sale either identical or substantially similar images registered in the Long Tail Cat Image and the Mark.

9.     In their offers for sale and displays, the Defendant Internet Stores share unique identifiers, such as design elements and similarities of the infringing products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation.

10.     Plaintiff is forced to file this action to combat Defendants' copyright infringement and trademark infringement and to protect unknowing consumers from purchasing unauthorized products over the internet.

11.     Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable copyright and the Mark. In addition, Plaintiff has been irreparably damaged by the loss of exclusivity of its copyright as a result of Defendants' actions. As a result of these injuries, Plaintiff seeks injunctive and monetary relief.

12.     This Court has personal jurisdiction over each Defendant, in that each Defendant conducts business in the United States, in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit were undertaken in Illinois and in this Judicial District. In addition, each defendant has offered to sell and ship infringing products into this Judicial District.

## THE PLAINTIFF

13.     Plaintiff Yiwu Baimei Electronic Commerce Co., Ltd., is a Chinese Limited Corporation having its principal place of business at Rm. 206, Unit 6, Bldg. 9, Xijingyuefu, Yi Wu, Zhejiang Province, China 322000.

14.     At all times relevant, Plaintiff has marketed and sold jewelry items in Class 14 through the Alibaba, Aliexpress, Amazon, DHgate, eBay, Joom Shein, Temu, Walmart and Wish e-commerce platforms utilizing the Mark. Sales include to the United States, Canada, and United Kingdom, as well as other countries.

15.     Plaintiff is the owner of all rights, title and interest in and to the Mark, U.S. Trademark Registration No. 5,805,891. The registration is valid, subsisting, unrevoked and uncancelled. The registration for the Mark constitutes *prima facie* evidence of validity and of Plaintiff's exclusive right to use the Mark pursuant to 15 U.S.C. § 1057(b).

16.     Plaintiff has been using the Mark since December 1, 2018, in connection with the advertising and sale of Plaintiff's Products in interstate and foreign commerce, including commerce in the State of Illinois and the Northern District of Illinois.

17.     Plaintiff is the owner of all rights, title and interest in and to the Long Tail Cat Image, U.S. Copyright Registration No. VA 2-330-282. The registration is valid and subsisting. The registration for the copyright images constitutes *prima facie* evidence of validity and of Plaintiff's exclusive right to use the registered images pursuant to 17 U.S.C. §410.

18.     Plaintiff has been using the Long Tail Cat Image since May 28, 2019.

19.     The Mark and the Long Tail Cat Image have been widely promoted, both in the United States and throughout the world. Genuine products bearing the Mark and the Long Tail

5

Cat Image are distributed through Plaintiff's internet stores on the Alibaba, Aliexpress, Amazon, DHgate, eBay, Joom, Shein, Temu, Walmart and Wish platforms.

20.     Plaintiff utilizes the registered Mark and Long Tail Cat Image in connection with the advertisement, marketing and sale of retail items through Alibaba, Aliexpress, Amazon, DHgate, eBay, Joom, Shein, Temu, Walmart and Wish platforms.

21.     Plaintiff controls the content, designs, and images displayed in the Long Tail Cat Image.

22.     The Long Tail Cat Image has not been assigned or licensed to any of the Defendants in this matter.

23.     The Mark has not been assigned or licensed to any of the Defendants in this matter.

24.     Plaintiff's Mark and the Long Tail Cat Image are symbols of Plaintiff's quality, reputation and goodwill and have never been abandoned.

25.     Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the Mark and the Long Tail Cat Image.

26.     Each image contained in the Long Tail Cat Image has independent economic value and has generated revenue in relation to the retail items and marketing value depicted therein.

## THE DEFENDANTS

27.     Plaintiff is currently unaware of the identity and/or location of Defendants. However, on information and belief, Defendants are individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the

6

operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores identified in Schedule A.

28.     Each Defendant targets the United States, including Illinois, and has offered to sell and/or has sold and/or continues to sell infringing products ("Infringing Products") to consumers within the United States, including Illinois and in this Judicial District.

29.     Each Defendant, without any authorization or license from Plaintiff, has knowingly and willfully used and continued to use Plaintiff's Long Tail Cat Image and the Mark in connection with advertisement, distribution, display and offering for sale without Plaintiff's consent or authorization.

30.     Each of the Defendants' online stores offer shipping to the United States, including Illinois. Each Defendant has offered to sell retail items with Plaintiff's trademark and displayed Plaintiff's Long Tail Cat Image in the offer for sale

31.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores including, and possibly not limited to, those listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

32.     This lack of precise information notwithstanding, it is well established that e-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* Exhibit Three, Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller

international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

33.     Further, third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." *See* Exhibit Four, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020). "Combating Trafficking in Counterfeit and Pirated Goods", prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached hereto as Exhibit Five, reports that "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. The Department of Homeland Security explains how infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. *See* Exhibit Five at 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *See* Exhibit Five at 39.

34.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Defendant Internet Stores by providing false, misleading and/or incomplete information to Internet based e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Defendant Internet Stores to prevent

discovery of their true identities and the scope of their counterfeiting and infringement network.

35.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling the Infringing Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting and infringement operation, and to avoid being shut down.

36.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating as the Defendant Internet Stores often share unique identifiers, such as templates with common design elements. E-commerce stores operating as the Defendant Internet Stores, or other currently unknown aliases, include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Infringing Products offered for sale by the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated.

37.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com and WeChat chat rooms regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

38.     Infringers and counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the

jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

39. On information and belief, Defendants are an interrelated group of infringers and counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell the Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, knowingly and willfully used and continue to use the Mark and the Long Tail Cat Image in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products with the display of the Long Tail Long Tail Cat Image and the Mark over the Internet in the United States and this District.

40. In sum, Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting ring are present in the instant action. For example, Schedule A shows the use of store names by the Defendant Internet Stores that have the appearance of being fabricated. Even if a company name appears to be legitimate, review of the Defendant Internet Stores reveals vague or non-existent company descriptions and descriptions of company purpose. Thus, the Defendant Internet Stores are using fake online storefronts designed to appear to be selling genuine Plaintiff's Products while they are actually selling inferior imitations of Plaintiff's Products.

41. Defendants' unauthorized use of the Mark and the Long Tail Cat Image in connection with the advertising, distribution, offering for sale, and sale of Infringing Products,

throughout the United States, including Illinois, are likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## **DEFENDANTS' UNLAWFUL CONDUCT**

42.     The success of Plaintiff's registered image and trademark have resulted in their counterfeiting and infringement. Plaintiff has identified numerous domain names linked to marketplace listings on certain platforms including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit and/or infringing products to consumers in Illinois, this Judicial District, and throughout the United States. Many of these Defendants also displayed and offered products for sale in Illinois, this Judicial District, and throughout the United States utilizing the copyrighted image without permission.

43.     Plaintiff has identified numerous domain names linked to marketplace listings on platforms such as Amazon.com, which were offering, marketing, soliciting, and advertising to consumers in this Judicial District and throughout the United States in a manner that violates Plaintiff's exclusive copyright in the Mark and registered copyright.

44.     Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and PayPal. Defendant Internet Stores often include images and design elements utilized in the Mark and registered copyright that make it very difficult for consumers to distinguish such counterfeit sites from that of an authorized retailer. Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers.

45.    Plaintiff has not licensed or authorized Defendants to use its Mark and the Long Tail Cat Image. None of the Defendants are authorized retailers of genuine products or authorized to display the registered copyright.

46.  Upon information and belief, Defendants also deceive unknowing consumers by using the Mark without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiff's products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine products.

47.    Defendants often go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, to avoid detection, Defendants register Defendant Internet Stores using names and physical addresses that are incomplete, contain randomly typed letters, or fail to include cities or states. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

48.    There are also similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts. In addition, the counterfeit and/or infringing products for sale in the Defendant Internet Stores bear similarities and indicia

of being related to one another, suggesting that the counterfeit and/or infringing products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. For example, some Defendants use the same e-commerce platforms as Plaintiff. The Defendant Internet Stores also include other notable common features on the same e-commerce platform, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, illegitimate SEO tactics, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

49.     Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

50.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and vendor accounts such as PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. Upon information and belief, the foreign Defendants maintain off-shore bank accounts and regularly move funds from their payment accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of payment transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based accounts to China-based bank accounts outside the jurisdiction of this Court.

51.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Mark in connection with the advertisement, distribution, offering for sale, and sale of counterfeit and infringing products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and has offered to sell counterfeit and/or infringing products into the United States, including Illinois.

52.     Defendants' use of the Mark and the Long Tail Cat Image in connection with the advertising, distribution, offering for sale, display and sale of counterfeit products, including the sale of counterfeit and infringing products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. §1114)

53.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the Mark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.

55.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and/or are still selling, offering to sell, marketing, distributing, and advertising products in connection with the Mark without Plaintiff's permission.

56.     Defendants have infringed Plaintiff's rights in the Mark by, among other things, using in commerce the identical and confusingly similar Mark in connection with the promotion, advertising, sale, offering for sale, and distribution of counterfeit products.

57.     Plaintiff is the exclusive owner of the Mark. Plaintiff's United States Registration for the Mark (Exhibit One) is in full force and effect. Plaintiff has never licensed or authorized Defendants to market, offer for sale, advertise, or distribute Plaintiff's branded products.

58.     Upon information and belief, Defendants have knowledge of Plaintiff's rights in the Mark and are willfully infringing and intentionally using counterfeits of the Mark.

59.     Defendants' willful, intentional and unauthorized use of the Mark is likely to cause, mistake, and deception as to the origin and quality of the counterfeit goods among the general public. Through Defendants' infringing activity, Defendants compromise the goodwill of the Mark by depriving Plaintiff of the exclusive control over the customer experience and guarantees of the brand.

60.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

61.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not preliminarily or permanently enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its Mark.

62.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of infringing products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

63.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

64.     Defendants' promotion, marketing, offering for sale, and sale of counterfeit products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit and/or infringing products by Plaintiff.

65.     By using Plaintiff's trademark in connection with the sale of counterfeit and/or infringing products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit products.

66.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

### COUNT III
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, et seq.)

67.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

68.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Plaintiff's genuine products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

69.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

16

70.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**COUNT IV**
**INFRINGEMENT OF COPYRIGHT**
**(17 U.S.C §101 ET SEQ.)**

71.     Plaintiff incorporates the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

72.     Plaintiff has complied in all respects with the Copyright Act of the United States and all other laws governing copyright and secured the exclusive rights and privileges in and to the copyrights at issue in this action.

73.     Pursuant to 17 U.S.C. § 411 (a), Plaintiff registered its images for advertising and marketing photographs. These registrations for the Long Tail Cat Image are valid, subsisting, unrevoked and uncancelled.

74.     Defendants directly infringed one or more of Plaintiff's exclusive rights in its federally registered copyright under 17 U.S.C. § 106.

75.     Defendants copied, displayed, and distributed Plaintiff's copyright protected Works and/or prepared derivative works based upon Plaintiff's copyright protected Works in violation of Plaintiff's exclusive rights under 17 U.S.C. §106(1), (2) and/or (5).

76.     Defendants' conduct constitutes willful and direct copyright infringement of Plaintiff's copyright protected copyright.

77.     Defendants profited from the direct infringement of the exclusive rights of Plaintiff in the Long Tail Cat Image at issue in this case under the Copyright Act.

78.     Defendants' infringement is not limited to the copyright infringement listed above. Plaintiff will identify such additional infringement after discovery.

79.     On information and belief, there is a business practice of infringement by Defendants.

80.     On information and belief, defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

81.     Plaintiff has been damaged by the Defendants' acts of copyright infringement.

82.     The harm to Plaintiff is irreparable.

83.     Plaintiff is entitled to temporary, preliminary and permanent injunctive relief from Defendants' willful infringement.

84.     As a result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to actual and/or statutory damages, including any profits obtained by Defendants attributable to the infringements, pursuant to 17 U.S.C. §504 for Defendants' infringement of the registered copyright.

85.     Plaintiff is entitled to recover its reasonable costs and attorneys' fees incurred in prosecuting this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.     using the Mark or any reproductions, counterfeit copies, or colorable imitations

18

thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with the Mark;

b.      passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Mark;

c.      using the Long Tail Cat Image in marketing, advertising, soliciting, or displaying, derivative or directly, which is not directly authorized by Plaintiff;

d.      further infringing on the Long Tail Cat Image;

e.      committing any acts calculated to cause consumers to believe that Defendants' infringing products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

f.      further infringing the Mark and damaging Plaintiff's goodwill; and

g.      manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's Mark, including the Mark, or any reproductions, counterfeit copies, or colorable imitations thereof, or the Mark;

h.      using, linking to, transferring, selling, exercising control over, or otherwise owning online marketplace accounts that are being used to sell products or inventory not authorized by Plaintiff which bear the Mark;

i.      operating and/or hosting websites which are involved with the distribution,

marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which bear the Mark or display the Long Tail Cat Image;

2)    Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon.com, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

a.    disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the Mark;

b.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods using without authorization the Mark;

c.    disable and cease providing services to engage in the advertisements using the Long Tail Cat Image or derivative works thereof;

d.    take all steps necessary to prevent links from Defendants' Internet Stores from displaying in search results, including, but not limited to, removing links to Defendants' Internet Stores from any search index;

3)    For Judgment in favor of Plaintiff against Defendants that they have:

a.    willfully infringed Plaintiff's rights in its federally registered copyright pursuant to 17 U.S.C. §501; and

b.    otherwise injured the business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

c.     That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged; such actual damages suffered by Plaintiff and that the amount of damages for infringement of the Mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117 or, in the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Mark;

d.     That Defendants account for all profits and damages resulting from Defendants' copyright infringement, or statutory damages, at Plaintiff's election, for all infringements involved in the action, with respect to any one work, for which any one defendant is liable individually, or for which defendants are liable jointly and severally with another, in a sum of not less than $750 or more than $30,000 as the Court considers just pursuant to 17 U.S.C. §504(c)(1), or to the extent the Court finds that infringement was committed willfully, an award of statutory damages to a sum of not more than $150,000 per violation, pursuant to 17 U.S.C. §504(c)(2);

e.     That Plaintiff be awarded its reasonable attorneys' fees and costs as available under 15 U.S.C. § 1117 and 17 U.S.C. § 505, and other applicable law;

4)     Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or ecommerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any

other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein;

5)      Entry of an award of prejudgment interest on the judgment amount;

6)      Award any and all other relief that this Court deems just and proper.

<strong>DEMAND FOR JURY TRIAL</strong>

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 7th day of March 2024.

/s/ Lydia Pittaway
Bar No. 0044790
Ford Banister LLC
305 Broadway - Floor 7
New York, NY 10007
Telephone: 212-500-3268
Email: lpittaway@fordbanister.com
*Attorney for Plaintiff*